FILED  
United States Court of Appeals  
Tenth Circuit

December 13, 2022

Christopher M. Wolpert  
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

| | |
|---|---|
| KEVIN O'ROURKE; NATHANIEL L. CARTER; LORI CUTUNILLI; LARRY D. COOK; ALVIN CRISWELL; KESHA CRENSHAW; NEIL YARBROUGH; AMIE TRAPP, <br><br>  Plaintiffs, <br><br>v. <br><br>DOMINION VOTING SYSTEMS, INC., a Delaware corporation; FACEBOOK, INC., a Delaware corporation; CENTER FOR TECH AND CIVIC LIFE; GRETCHEN WHITMER, individually; JOCELYN BENSON, individually; TOM WOLF, individually; KATHY BOOCKVAR, individually, <br><br>  Defendants - Appellees, <br><br>and <br><br>MARK E. ZUCKERBERG, individually; PRISCILLA CHAN, individually; BRIAN KEMP, individually; BRAD RAFFENSPERGER, individually; TONY EVERS, individually; ANN S. JACOBS; MARK L. THOMSEN, individually; MARGE BOSTELMAN, individually; JULIE M. GLANCEY, individually; DEAN KNUDSON, individually; ROBERT F. SPINDELL, JR., individually; DOES 1-10,000, <br><br>  Defendants. | No. 21-1442 <br> (D.C. No. 1:20-CV-03747-NRN) <br> (D. Colo.) |

-----------------------------

GARY D. FIELDER; ERNEST J. WALKER,

    Attorneys - Appellants.

_____

### ORDER AND JUDGMENT[*]

_____

Before **HOLMES**, Chief Judge, **TYMKOVICH** and **ROSSMAN**, Circuit Judges.

_____

Gary D. Fielder and Ernest J. Walker, the attorneys for the plaintiffs in the underlying action ("the Attorneys"), appeal from the district court's order requiring them to pay the defendants a total of $186,922.50 as sanctions under the court's inherent powers, Federal Rule of Civil Procedure 11, and 28 U.S.C. § 1927. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the award of sanctions under the court's inherent powers and § 1927.

### BACKGROUND

The plaintiffs sought to pursue a civil-rights class action alleging that the defendants violated the constitutional rights of every person registered to vote in the November 2020 election for President of the United States. *See O'Rourke v. Dominion Voting Sys., Inc.* ("*O'Rourke I*"), No. 21-1161, 2022 WL 1699425, at *1

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(10th Cir. May 27, 2022), *cert. denied,* -- U.S.L.W. --, 2022 WL 17408191 (U.S. Dec. 5, 2022) (No. 22-305). They based their standing on their status as registered voters. *See id.* For relief, they sought "a declaratory judgment, a permanent injunction enjoining Defendants from continuing to burden the rights of Plaintiffs and all similarly situated registered voters, and 'nominal' damages of $1,000 per registered voter, totaling approximately $160 billion." *Id.* (citations and internal quotation marks omitted).

Among the defendants were Dominion Voting Systems, Inc. ("Dominion"), Facebook, Inc. (now known as Meta Platforms, Inc.) ("Facebook"), and the Center for Tech and Civic Life ("CTCL"). These three defendants moved to dismiss on various grounds, including that the plaintiffs lacked standing because they sought to assert only non-justiciable, generalized grievances. The plaintiffs opposed the motions to dismiss, but then moved for leave to file an amended complaint that would add new plaintiffs and new claims, including claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Dominion, Facebook, and CTCL opposed the motion to amend.

Other defendants included the governors and secretaries of state of Michigan and Pennsylvania, named in their individual capacities. These four defendants moved to dismiss, alleging not only that the plaintiffs lacked standing but that the District of Colorado lacked personal jurisdiction over them. And they opposed the plaintiffs' motion to amend, as they were named as defendants in the proposed amended complaint. Before the district court decided the defendants' various

3

motions to dismiss, however, the plaintiffs voluntarily dismissed their claims against the Michigan and Pennsylvania defendants.

The district court, a magistrate judge presiding by consent of the parties, entertained argument on the motions to dismiss and the motion to amend. After hearing from Dominion, Facebook, and CTCL, the district court pressed the Attorneys on the question of their clients' standing, specifically whether they could show any particularized injury.

Ultimately, in light of the voluntary dismissal, the district court denied the Michigan and Pennsylvania defendants' motions to dismiss as moot. As to Dominion, Facebook, and CTCL, the district court held that the plaintiffs failed to demonstrate standing to pursue their claims because they had not plausibly pleaded particularized injury, but instead sought to pursue only generalized grievances. It further held that granting leave to amend would be futile because the proposed amended complaint also failed to plausibly plead sufficient particularized injury to overcome the generalized grievance doctrine. The district court thus granted the defendants' motions to dismiss, denied the plaintiffs' motion to amend, and dismissed the action for lack of Article III jurisdiction.

Dominion, Facebook, and CTCL then moved for an award of their attorney's fees under Rule 11, § 1927, and the court's inherent powers, and the Michigan and Pennsylvania defendants moved for an award of their attorney's fees under § 1927 and the court's inherent powers. After briefing and oral argument before the district

court, the Attorneys moved for an evidentiary hearing. Noting that the motions already had been submitted, the district court denied the request as untimely.

The district court granted all the defendants' motions for sanctions and ordered the Attorneys to pay the defendants' fees incurred for preparing and arguing their motions to dismiss and their oppositions to the plaintiffs' motion to amend. The district court subsequently denied the Attorneys' Federal Rule of Civil Procedure 59(e) motion (except to correct a prior statement that the Michigan defendants had sought sanctions under Rule 11). The sanctions awards totaled $186,922.50: $62,930 to Dominion, $50,000 to Facebook, $62,930 to CTCL, $4,900 to the Michigan defendants, and $6,162.50 to the Pennsylvania defendants.

In the meantime, the plaintiffs appealed from the dismissal of their action. We affirmed the dismissal for lack of standing, holding that the district court correctly applied the generalized grievance doctrine. *See O'Rourke I*, 2022 WL 1699425, at *2. We further upheld the denial of the motion to amend on grounds of futility. *See id.* at *3. The Supreme Court denied the plaintiffs' petition for a writ of certiorari.

The Attorneys now appeal from the sanctions order.

## DISCUSSION

We review a sanction award, whether under Rule 11, § 1927, or the court's inherent powers, for abuse of discretion. *See Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly

5

erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

I.  **Propriety of Sanctions**

   A.  **Rule 11 Sanctions**

The Attorneys note that the district court dismissed the plaintiffs' claims before Dominion, Facebook, and CTCL filed their motions for sanctions. In *Roth v. Green*, 466 F.3d 1179, 1193 (10th Cir. 2006), we agreed with an appellant's contention "that the motions for [Rule 11] sanctions should have been denied because they were not filed until after the district court had dismissed the complaint." The defendants offer various reasons why it nonetheless was proper to impose sanctions under Rule 11, but we need not consider these issues further because we affirm the sanctions awards under the court's inherent powers and § 1927. *Cf. Farmer*, 791 F.3d at 1257 (declining to consider sanctions under § 1927 and instead focusing on sanctions under the court's inherent powers).

   B.  **Inherent Powers Sanctions**

      1.  **Legal Standards**

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, ___, 137 S. Ct. 1178, 1186 (2017) (citation and internal quotation marks omitted). "[A] court may assess attorney's fees when a party has

6

acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation marks omitted). But "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44.

### 2.     Attorneys' Challenges to Inherent-Powers Sanctions

The Attorneys make two arguments regarding sanctions under the court's inherent powers. First, they argue that the district court should not have imposed inherent-powers sanctions because the defendants did not argue that their conduct fell outside the scope of Rule 11 and § 1927. Second, they contend that the record does not support the imposition of inherent-powers sanctions.

### i.     No Need to Rely on Rule 11 or § 1927

The Attorneys first argue that an inherent-powers sanction was inappropriate because the defendants did not argue that the Attorneys committed wrongful conduct that was outside the scope of Rule 11 or § 1927. We have observed, however, that "*Chambers* does not require consideration of sanctions under the federal rules before a court invokes its inherent powers." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n* ("*Auto-Owners I*"), 886 F.3d 852, 858 (10th Cir. 2018).

> *Chambers* states that when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But *Chambers* adds that a court may impose sanctions by means of the inherent power even if the conduct could also be sanctioned under the Rules.

*Id.* at 857-58 (ellipses, citation, and internal quotation marks omitted). Accordingly, we reject this argument.

7

### ii.     The Evidence Satisfies the *Chambers* Standard

The Attorneys further argue that "no evidence exists in the record that objectively demonstrates that [they] acted improperly, or unprofessional[ly]. In fact, to the contrary, [they] have filed well-researched and thoroughly documented complaints and other pleadings." Aplt. Opening Br. at 47. Regardless of any other issues involved in this case, however, we need not look beyond the issues of standing and personal jurisdiction to conclude the district court did not abuse its discretion in finding that the Attorneys acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," as required by *Chambers*.

First, the district court found that "there was no good faith basis for believing or asserting that Plaintiffs had standing to bring the claims that they did" because "[t]here was no individual particularized harm alleged," Aplt. App. Vol. 11 at 2616, and "[n]o reasonable attorney would have believed Plaintiffs, as registered voters and nothing more, had standing to bring this suit," *id.* at 2617. This finding is amply supported in the record.

As discussed in *O'Rourke I*, the plaintiffs did not articulate any cognizable particularized injury that would establish standing. 2022 WL 1699425, at *2. And it was evident from the beginning that the plaintiffs faced an uphill battle. As the district court stated in its merits decision, there was "a veritable tsunami of decisions finding no Article III standing in near identical cases to the instant suit." Aplt. App. Vol. 7 at 1552. Yet the Attorneys' "efforts to distinguish between this case and the other dismissed lawsuits were either self-contradictory (claiming that this suit is

8

brought against private entities and not government entities) or nonsensical and precluded by Supreme Court caselaw (suggestion that seeking money damages rather than an injunction as a remedy makes Plaintiffs' claimed injury sufficiently particularized to form a basis for standing)." *Id.* Vol. 11 at 2616.

At the hearing on the motions to dismiss and the motions to amend, the district court explicitly gave Mr. Fielder the opportunity to distinguish the many adverse cases cited by the defendants, but he was not able to meaningfully do so. He also was not able to meaningfully explain how the proposed amended complaint established the plaintiffs' standing. And when the district court asked him to identify the plaintiffs' "most supportive" case to establish standing, Aplt. App. Vol. 7 at 1701, he cited *Terry v. Adams*, 345 U.S. 461 (1953), which involved whether a private entity was engaged in state action, *Brown v. Board of Education of Topeka*, 347 U.S. 483 (1954), which held that school segregation was unconstitutional, and *Anderson v. Celebrezze*, 460 U.S. 780 (1983), which held that a state could not impose an earlier filing deadline for independent candidates. But those cases neither address the requirements for standing nor establish that the plaintiffs in this case had a particularized injury to support standing. He also relied on *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), which held that nominal damages satisfies the redressability element of standing. Directly contradicting any assertion that *Uzuegbunam* addressed injury, however, the Court stated, "[o]ur holding concerns only redressability. It remains for the plaintiff to establish the other elements of standing *(such as a particularized injury)* . . . ." *Id.* at 802 (emphasis added).

9

In short, Plaintiffs' arguments regarding standing were so inadequate that it was not an abuse of discretion for the district court to conclude that the claims were made in bad faith, vexatiously, wantonly, or for oppressive reasons, such as to support inherent-powers sanctions. *Cf. Collins v. Daniels*, 916 F.3d 1302, 1321 (10th Cir. 2019) (upholding Rule 11 sanctions where "Plaintiffs' standing arguments ignored controlling precedent" and "Plaintiffs unreasonably attempted to distinguish" binding authorities regarding standing).

Second, the district court found that there was no good-faith basis for asserting personal jurisdiction over the Michigan and Pennsylvania defendants in the District of Colorado. This finding too is more than amply supported. The Attorneys concede that they dismissed their claims against these defendants because "there was, admittedly, an issue over the Plaintiffs' ability to establish personal jurisdiction." Aplt. Opening Br. at 43. They admitted before the district court that they researched personal jurisdiction only *after* receiving the motions to dismiss, at which point they determined they "could not feel with certainty that [they] could establish personal jurisdiction." Aplt. App. Vol. 11 at 2500. And when questioned by the district court, they could not identify a single case supporting the proposition that a federal court sitting in State A has personal jurisdiction over an official of State B regarding actions taken by that official with regard to elections within State B.

The Attorneys contended that the defendants *could* have consented to personal jurisdiction in the Colorado district court. But as the district court stated, "[I]t is inconceivable to have ever thought that state officials of Pennsylvania or Michigan

would voluntarily waive personal jurisdiction and come to a *Colorado* federal court to answer charges about acts taken during the administration of Pennsylvania or Michigan elections." *Id.* at 2588.¹ Moreover, if the plaintiffs' sole hope was that the defendants would waive personal jurisdiction, the Attorneys could have inquired of the defendants—before filing this lawsuit—whether there was any possibility of such a waiver. The answer "no" would have saved both the parties and the district court the time and expense devoted to the plaintiffs' claims against the Michigan and Pennsylvania defendants.

For these reasons, we affirm the imposition of sanctions under the court's inherent powers.

C.    **Section 1927 Sanctions**

1.    **Legal Standards**

Under § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 focuses on whether an attorney's conduct "imposes unreasonable and unwarranted burdens on the court and opposing parties." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (en banc). "An attorney

---

¹ The Attorneys object to the district court's use of the term "state officials" because the plaintiffs sued the Michigan and Pennsylvania defendants in their individual capacities rather than their official capacities. This objection is meritless. Given that the Michigan and Pennsylvania defendants were state officials, the term is accurate, no matter in what capacity the plaintiffs sued them.

becomes subject to § 1927 sanctions by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law." *Id.* at 1511 (internal quotation marks omitted). Because § 1927 applies only to the *multiplication* of proceedings, however, it does not extend to the *initiation* of proceedings (i.e., filing a complaint). *See Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224-25 (10th Cir. 2006).

An attorney's subjective motivations are irrelevant; "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court is sanctionable." *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015) (brackets and internal quotation marks omitted); *see also Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1203 (10th Cir. 2008) ("Where, 'pure heart' notwithstanding, an attorney's momentarily 'empty head' results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible."). An attorney is expected to exercise judgment, *see Hamilton*, 519 F.3d at 1202; *Braley*, 832 F.2d at 1512, and must "regularly re-evaluate the merits" of claims and "avoid prolonging meritless claims," *Steinert*, 440 F.3d at 1224. Accordingly, "[c]ontinuing to pursue claims after a reasonable attorney would realize they lacked merit can warrant sanctions under § 1927." *Frey v. Town of Jackson*, 41 F.4th 1223, 1245 (10th Cir. 2022); *see also Baca*, 806 F.3d at 1278 ("[I]n a meritless case, protracted failure to do anything but dismiss the case . . . might be sanctionable.").

### 2.　　Attorneys' Challenges to § 1927 Sanctions

The Attorneys make two arguments regarding the § 1927 sanctions. First, they assert that Michigan and Pennsylvania lack standing to seek sanctions because they sued the Michigan and Pennsylvania defendants in their individual capacities, not in their official capacities. Second, they deny that they unreasonably and vexatiously multiplied the proceedings.

#### i.　　There is No Lack of Standing

The Attorneys assert that the Michigan and Pennsylvania defendants improperly appeared in their official capacities, rather than in the individual capacities in which they were named in the suit. As best we can tell, they thus contend that Michigan and Pennsylvania lacked standing to seek sanctions under § 1927 because their officials were not named in their official capacities, and therefore the states themselves were not parties to the suit.

We see no merit to this argument. The Michigan and Pennsylvania defendants were the ones who sought and obtained sanctions. Although the awards were payable due to the work of the respective states' offices of the attorneys general, the Attorneys have failed to demonstrate any lack of standing by the defendants to seek sanctions. Notably, the principal ground for awarding § 1927 sanctions to these defendants—the continued failure to acknowledge lack of personal jurisdiction—applied whether the defendants were sued in their official capacities or their individual capacities.

### ii. The Attorneys Multiplied the Proceedings

The Attorneys next argue that they did not "unreasonably and vexatiously" multiply the proceedings. The district court based its award of § 1927 sanctions on the "filing of a motion for leave to amend, without addressing the obvious fatal problems with standing and lack of personal jurisdiction, while attempting to add RICO claims based on a TIME magazine article that provided no support for such claims." Aplt. App. Vol. 11 at 2631-32.

Regarding the Michigan and Pennsylvania defendants, personal jurisdiction was an obvious issue. These defendants' motions to dismiss highlighted the problem. And by the time the Attorneys filed the motion to amend, they were aware that these defendants were not going to consent to personal jurisdiction. Nevertheless, without addressing personal jurisdiction, the Attorneys moved to file a proposed amended complaint that continued to name these defendants.[2] Given the plaintiffs' inability to establish personal jurisdiction over the Michigan and Pennsylvania defendants, it was not an abuse of discretion for the district court to conclude that the Attorneys unreasonably and vexatiously multiplied the proceedings by failing to dismiss the claims against them before filing the motion to amend and by naming them in the proposed amended complaint. *See Frey*, 41 F.4th at 1245 ("Continuing to pursue claims after a reasonable attorney would realize they lacked merit can warrant sanctions under § 1927."); *Steinert*, 440 F.3d at 1224 (recognizing an attorney must

---

[2] The proposed amended complaint also named as additional defendants the attorneys general of Michigan and Pennsylvania, in their official capacities.

"regularly re-evaluate the merits of their claims and . . . avoid prolonging meritless claims").

As for Dominion, Facebook, and CTCL, they all raised the issue of plaintiffs' standing at an early juncture. For substantially the same reasons discussed above in connection with the inherent-powers sanctions, it was not an abuse of discretion for the district court to conclude that the Attorneys unreasonably and vexatiously multiplied the proceedings by moving to amend their complaint, including adding RICO claims, without showing that the plaintiffs had standing to bring their claims. *See Frey*, 41 F.4th at 1245; *Steinert*, 440 F.3d at 1224.

For these reasons, we affirm the imposition of sanctions under § 1927.

## II.   Constitutional Challenges

The Attorneys further argue that the sanctions violate their First Amendment rights to speak and petition the government for redress of grievances and their Fifth Amendment right to due process.

### A.   The Sanctions Did Not Violate the First Amendment

Although "[t]he right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances," "the First Amendment interests involved in private litigation are not advanced when the litigation is based on knowingly frivolous claims." *Collins*, 916 F.3d at 1323 (alterations and internal quotation marks omitted). We have recognized that "the right to petition is not an absolute protection from liability," *United States v. Ambort*, 405 F.3d 1109, 1117 (10th Cir. 2005) (internal quotation marks omitted), and "the

First Amendment is in no way a defense to Rule 11 violations," *King v. Fleming*, 899 F.3d 1140, 1151 n.17 (10th Cir. 2018). In the circumstances of this case, where the plaintiffs' arguments regarding standing and personal jurisdiction were utterly baseless, the Attorneys have failed to establish that the district court's sanctions violated their First Amendment rights.

        B.       **The Sanctions Did Not Violate Due Process**

The Attorneys complain that both the district court's merits and sanctions orders were "peppered with disdainful comments toward [the Attorneys] and the Plaintiffs." Aplt. Opening Br. at 50. But "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," *Liteky v. United States*, 510 U.S. 540, 555 (1994), and to the extent the Attorneys intended to assert a due-process violation from impermissible bias or prejudice, they have not shown that the district court's remarks went beyond the ordinary case.

The Attorneys further complain that the district court denied their post-argument request for an evidentiary hearing. While acknowledging that notice and an opportunity to respond generally satisfies due process in the sanctions context, *see, e.g.*, *Braley*, 832 F.2d at 1514, they assert that in this case, due process also required an evidentiary hearing. We disagree.

"The precise procedural protections of due process vary, depending upon the circumstances, because due process is a flexible concept unrestricted by any bright-line rules." *Steinert*, 440 F.3d at 1222. It has long been accepted, however,

that "the sanction inquiry may properly be limited to the record in most instances." *Braley*, 832 F.2d at 1515; *see also Collins*, 916 F.3d at 1320 n.15 (rejecting argument "that the Rule 11 hearing was deficient because Plaintiffs should have been allowed to produce evidence"); *White v. Gen. Motors Corp.*, 908 F.2d 675, 686 (10th Cir. 1990) ("[A]n opportunity to be heard does not require an oral or evidentiary hearing on the issue. The opportunity to fully brief the issue is sufficient to satisfy due process requirements."). Relatively recently, we upheld a sanctions award exceeding $100,000 that was imposed without any type of hearing. *See Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n* ("*Auto-Owners II*"), 886 F.3d 863, 873 (10th Cir. 2018) (stating that attorneys' receipt of application for fees and opportunity to respond satisfied due process). The Attorneys have not shown that this case falls outside the general rule, particularly when their request for an evidentiary hearing was untimely.

### III. Amount of Sanctions

Finally, the Attorneys attack the amounts of the sanctions awards. They concede that the awards in favor of the Michigan and Pennsylvania defendants were reasonable, but they contend that those in favor of Dominion, Facebook, and CTCL were not. The Attorneys recognize that the district court properly employed the lodestar method. Further, they accept the defendants' representations as to the hours expended and the reasonableness of the hourly rates. They simply believe that "requiring [them] to pay over $180,000 in attorney fees is excessive and

unreasonable." Aplt. Opening Br. at 48. Citing critical remarks by the district court, they also indicate that the awards amounted to an impermissible punitive sanction.

When a court orders an award of the other side's attorneys' fees under its inherent powers, "such an order is limited to the fees the innocent party incurred solely because of the misconduct." *Goodyear*, 137 S. Ct. at 1184. And we keep in mind that § 1927's purpose is "to compensate victims of abusive litigation practices, not to deter and punish offenders." *Hamilton*, 519 F.3d at 1205. The Attorneys, however, fail to convince us that the district court awarded punitive sanctions, rather than compensatory sanctions. Although the district court made statements that could be interpreted as an intent to deter this kind of lawsuit, there is no dispute that the amounts it ultimately awarded were calculated according to the attorneys' fees actually incurred (and, indeed, discounted from there—the district court did not award the full amounts some of the defendants claimed).

Moreover, the Attorneys fail to convince us that the award was excessive and unreasonable. "In applying the abuse-of-discretion standard, we consider whether the district court's determination appears reasonable in light of the complexity of the case, the number of strategies pursued, and the responses necessitated by the other party's maneuvering." *Auto-Owners II*, 886 F.3d at 873. The case was complex, with the plaintiffs initially pursuing a number of constitutional claims and then moving to add additional claims, including RICO allegations. They also sought to represent a nationwide class of registered voters. And although the disposition ultimately turned on the plaintiffs' standing and whether they could overcome the

generalized grievance doctrine, the defendants also had to address other issues—for example, whether they, as non-governmental entities, could be sued under § 1983, and in Facebook's case, the potential effect of Section 230 of the Communications Decency Act. Moreover, the plaintiffs set extraordinarily high monetary stakes, requesting "nominal" damages amounting to $160 billion.

For these reasons, the sanctions awards were not an abuse of discretion.

## CONCLUSION

We affirm the district court's sanctions order.

>Entered for the Court
>Per Curiam